UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> vs. <br><br> 1) HOSSEIN KALANI AFSHARI <br> 2) MOHAMMAD HOSSEIN OMIDVAR <br> 3) HASSAN REZAIE <br> 4) ROYA RAHMANI <br> 5) NAVID TAJ <br> 6) MOUSTAFA AHMADY <br> 7) ALIREZA MOHAMMADMORADI <br><br> **Defendants** | CASE NO. CR 01-209(C) DOC <br><br> **O R D E R** DENYING **DEFENDANTS' MOTION TO ALLOW DEFENDANTS TO CHALLENGE THE MEK'S DESIGNATION AS A FOREIGN TERRORIST ORGANIZATION OR TO DISMISS COUNTS 59-117** <br> (Motion No. 3) |

Before the Court is Defendants' Roya Rahmani, Alireza Mohammadmoradi, Moustafa Ahmady, Hossein Kalani Afshari, Hassan Rezaie, Navid Taj, and Mohammad Hossein Omidvar ("Defendants") Motion to Allow Defendants to Challenge the MEK's Designation as a Foreign Terrorist Organization or to Dismiss Counts 59-117 (the "Motion"). After considering the

moving, opposing, and replying papers, as well as the parties' oral argument, the Court hereby DENIES Defendants' Motion.

Defendants bring the instant Motion on various grounds, arguing that a portion of the Antiterrorism and Effective Death Penalty Act of 1996 (the "AEDPA") – to wit, 8 U.S.C. §1189(a)(8) – can be read to authorize the judicial examination of its constitutionality. Further, Defendants argue that, if such review is precluded, 8 U.S.C. §1189 ("Section 1189") must be held to be unconstitutional under the U.S. Constitution's separation of powers principles articulated in Article III, the First and Sixth Amendments, and the Due Process Clause of the Fifth Amendment. The relevant portion of Section 1189 states, in pertinent part: If an organization has been designated to be a Foreign Terrorist Organization ("FTO") under paragraph (2)(B) of Section 1189, "a defendant in a criminal action or an alien in a removal proceeding shall not be permitted to raise any question concerning the validity of the issuance of such designation as a defense or an objection at any trial or hearing." 8 U.S.C. §1189(a)(8). The Court addresses each of Defendants' arguments in turn.

**I. Procedural Posture**

The issues raised by Defendants are not novel and, indeed, many have been raised and addressed by our sister courts. The U.S. Government indicted the Defendants in March 2001 based upon the Secretary of State's designations of the Mujahedin-e Khalq ("MEK") as an FTO. In June of 2001, the D.C. Circuit held that while the process by which those designations were promulgated violated procedural due process, it need not vacate the Secretary's designations. *NCRI v. State Dep't*, 251 F.3d 192, 209 (D.C. Cir. 2001). Instead, mindful of the "realities of the foreign policy and national security concerns raised by the Secretary," as well as the fact that the designations were set to expire within months, the *NCRI* Court "remand[ed] the questions to the Secretary with instructions that the petitioners be afforded the opportunity to file responses to the nonclassified evidence against them, to file evidence in support of their allegations that they are not terrorist organizations, and that they be afforded an opportunity to be meaningfully heard by the Secretary upon the relevant findings." *Id.* Stated differently, the D.C. Circuit found that while the initial FTO determination violated procedural due process under the Fifth Amendment,

2

1  the Secretary could and would remedy said problems by following the D.C. Circuit's
2  instructions on re-affirmation of the MEK's FTO designation.  *Id*.

3  Subsequently, Defendants sought dismissal of their indictment in this case, asking the
4  Central District of California to bar the Government from using the 1997 and 1999 designations
5  as a basis for the instant criminal prosecution in light of the *NCRI* decision.  Judge Takasugi
6  found for Defendants on these claims, holding that it would violate the Due Process Clause to
7  allow Section 1189(a)(8)'s limitation on judicial review to prevent Defendants' constitutional
8  challenge to the designation from being heard.  *U.S. v. Rahmani*, 209 F.Supp.2d 1045 (C.D.Cal.,
9  2002).  However, in October of 2005 the Ninth Circuit reversed the *Rahmani* decision, finding
10 that any violation of the MEK's procedural due process rights occurring during the MEK's
11 designation as an FTO was harmless.  *U.S. v. Afshari*, 426 F.3d 1150 (9th Cir. 2005).

12 As explained below, the issues raised by Defendants in the instant motion constitute an
13 attempt to re-litigate a significant number of issues which, while admittedly complex and have
14 already been adjudicated by both the Ninth Circuit and the D.C. Circuit.

15 **II. Section 1198(a)(8) is Subject to Judicial Review for Constitutionality**

16 Defendants' first argue that Section 1198 should be construed so as to authorize review of
17 the validity of the MEK's designation as an FTO.  In so arguing, Defendants state the long-held
18 principle of statutory construction that "every reasonable construction must be resorted to in
19 order to save a statute from unconstitutionality."  *INS v. St. Cyr*, 533 U.S. 289, 300 n.12
20 (2001)(quoting *Hooper v. California*, 155 U.S. 648, 657 (1895)).  Yet, rather than reading
21 Section 1189 to bar review of constitutional claims (an admittedly unconstitutional
22 construction), this Court finds that the AEDPA is subject to constitutional challenge, as it was in
23 *Afshari*.  The crucial point is that the *Afshari* Court held that 1189(a)(8) is *not* unconstitutional.

24 For the foregoing reasons, the Court finds that 1189(a)(8) is subject to judicial review for
25 constitutionality, yet this does not significantly impact the Court's decision with respect to the
26 issues raised in the instant Motion as the both the Ninth Circuit and the D.C. Circuit have
27 already addressed the constitutionality of Section 1189(a)(8).

28 **III.  Only the MEK itself may challenge the validity of its designation as an FTO**

3

Defendants' next argue that this Court should construe Section 1189(a)(8) to preserve judicial authority to examine the validity of the designation in this case. More specifically, Defendants contend that they should be permitted to argue that the MEK does not meet the criteria for designation as a terrorist organization, rather than arguing that the designation as a whole was invalid (a point which the D.C. Circuit has already ruled upon). That is a distinction without a difference as both the plain text of Section 1189 and the D.C. Circuit's holding in *NCRI* make plain that a criminal defendant may not raise "*any question* concerning the validity of the issuance of" an FTO designation. 8 U.S.C. 1189(a)(8). Further, in *NCRI* the Ninth Circuit upheld the constitutional validity of Congress' decision to permit challenges to FTO designations only where brought by the FTO itself, as opposed to a challenge brought by an individual. *Afshari*, 426 F.3d at 1154-58 (citing 8 U.S.C. §1189(c) ["Not later than 30 days after publication in the Federal Register of a designation, an amended designation, or a determination in response to a petition for revocation, the designated organization may seek judicial review in the United States Court of Appeals for the District of Columbia Circuit."]). In so holding, the Ninth Circuit explained that this congressional restriction "avoids the awkwardness of criminalizing material support for a designated organization in some circuits but not others, as varying decisions in the different regional circuits might." *Id*. at 1155.

For the foregoing reasons, the Court finds that Section 1189(a)(8) does not permit Defendants to challenge the validity of the MEK's designation as an FTO. In so holding the Court is mindful of the deeply troubling fact that many FTO designations may be completely immune from challenge because no individual may ever challenge the designation and, as a practical matter, most organizations may not be able to challenge the designation on their behalf – even if it is unconstitutional. However, principles of vertical stare decisis prevent this Court from altering the holdings of either the 9th Circuit or the D.C. Circuit.

**IV. Article III Does not Require an Independent Examination of the MEK's Designation as an FTO Upon this Court's Own Record**

Defendants next argue that the *Afshari* Court did not consider the possibility that Section 1189 violates separation of powers principles under Article III insofar as it prohibits a defendant

4

1  in a criminal proceeding from attacking the validity of the underlying relevant FTO designation.
2  However, while the *Afshari* Court may *arguably* be said to have refrained from expressly
3  considering this issue, it certainly implicitly considered this issue in reaching its opinion, stating,
4  *inter alia*:

> The district court found that it was a facially unconstitutional restriction on judicial review of the designation for Congress to assign such review exclusively to the D.C. Circuit.  We reject that position.  Many administrative determinations are reviewable only by petition to the correct circuit court, bypassing the district court, and that procedure has generally been accepted.  Many are reviewable only in the D.C. Circuit, or the Federal Circuit, and those restrictions have also been generally accepted.  The congressional restriction does not interfere with the opportunity for judicial review, ***as the MEK's extensive litigation history shows***. ... Congress clearly chose to delegate policymaking authority to the President and Department of State with respect to designation of terrorist organizations, and to keep such policymaking authority out of the hands of United States Attorneys and juries. ...

*Afshari*, 426 F.3d at 1154-55 (emphasis supplied).  Stated differently, the *Afshari* Court resolved this issue under the political question doctrine, which requires Article III courts to refrain from adjudicating certain political issues.  Moreover, the *Afshari* Court was not presented with a case in which the FTO at issue had not exercised its option, under Section 1189, to challenge its designation as an FTO – nor are we.  Indeed, this grave issue is not yet ripe for adjudication, as it is not presently before us.  Instead, as stated earlier, we are presented with a situation in which the MEK received judicial review of its designation as an FTO whereas the individual defendants at issue did not.  While this issue is constitutionally troubling, it was addressed by the *Afshari* Court, which faced the extraordinarily difficult task of balancing the efficiencies and expertise of the Secretary of State in classifying an entity as an FTO against values at the very

heart of our judicial system as to the separation of powers, as expressed within Article III.

Even assuming *arguendo* that the *Afshari* Court had not already addressed the issue before us today, Defendants would have a difficult time making an impenetrable Article III separation of powers claim due to the fact that the jurisprudence regarding the necessity of judicial review of agency determinations is extraordinarily complicated and confused. *Cf. Crowell v. Benson,* 285 U.S. 22 (1932); *Yakus v. United States*, 321 U.S. 414 (1944); *U.S. v. Raddatz*, 447 U.S. 667 (1980); *Commodity Futures Trading Com'n v. Schor,* 478 U.S. 833 (1986); *U.S. v. Mendoza-Lopez*, 481 U.S. 828 (1987); *see also* Richard H. Fallon, *Of Legislative Courts, Administrative Agencies, and Article III*, 101 HARV. L. REV. 915, 976, 988-89, 990 (1988) ("In ruling on fact-specific constitutional challenges, a court should generally give deference to the factual findings of an administrative agency, including inferences calling for expert judgment that go beyond purely 'historical' facts." ... And yet, "[q]uestions about the necessity of review should be answered on a context-sensitive basis, with a presumption that no review is required when a statutory scheme provides reasonable protection of Article III's fairness value. As in public rights disputes, this presumption should be reversed when constitutional or jurisdictional facts are at issue, and possibly also when important liberty interests-such as the interest in avoiding incarceration or deportation-are at stake." Moreover, "Article III mandates that constitutional courts possess the power, although generally not the obligation, to conduct an independent review of all questions of constitutional fact decided by other kinds of federal tribunals." (Internal citations omitted)).

Additionally, as the Government points out in its opposition papers, the theory put forth by the Defendants in the Instant Motion presents substantial obstacles to effective jurisprudence in the area of national security concerns. For example, under Defendants' reasoning, no criminal prosecution could proceed under 18 U.S.C. §2332d(a), which prohibits the knowing engagement in financial transactions with foreign supporters of terrorism, without a finding by a jury that the foreign state at issue had engaged in act(s) constituting the support of terrorism. One struggles to envisage how a jury could undertake such an endeavor. And yet, as eluded to earlier, the Court is mindful of the fact that Article III, §1 not only preserves litigants their interest in an

impartial and independent federal adjudication of claims within the judicial power of the United States, but also serve as "an inseparable element of the constitutional system of checks and balances." *Northern Pipeline Const. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 58 (1982). Moreover, although "an absolute construction of Article III is not possible in this area of 'frequently arcane distinctions and confusing precedents,'" *Thomas v. Union Carbide Agr. Products Co.*, 473 U.S. 568, 583 (1985)(citing *Northern Pipeline*, 458 U.S. at 90)(concurring opinion), the danger of Congress or the Executive encroaching on Article III judicial powers is at its highest in a criminal prosecution. *Union Carbide*, 473 U.S. at 591.

Notwithstanding this Court's profound concerns with the separation of powers principles implicated in the instant case, it is mindful and respectful of the general political question doctrine, particularly as it was applied to the instant case in *Afshari*. In *Afshari*, the Ninth Circuit explicitly noted:

> The sometimes subtle analysis of a foreign organization's political program to determine whether it is indeed a terrorist threat to the United States is particularly within the expertise of the State Department and the Executive Branch. Juries could not make reliable determinations without extensive foreign policy education and the disclosure of classified materials. Nor is it appropriate for a jury in a criminal case to make foreign policy decisions for the United States. Leaving the determination of whether a group is a 'foreign terrorist organization' to the Executive Branch, coupled with the procedural protections and judicial review afforded by the statute, is both a reasonable and a constitutional way to make such determinations. The Constitution does not forbid Congress from requiring individuals, whether they agree with the Executive Branch determination or not, to refrain from furnishing material assistance to designated terrorist organizations during the period of designation.

*Id*. at 1162.

1    For the foregoing reasons, Defendants' request for an independent examination of the
2 MEK's designation as an FTO, upon this Court's own record, must be denied.

3    **V. The First and Sixth Amendments Do Not Require that the Issue of the Validity of**
4 **the Designation be Submitted to a Jury**

5    Defendants further contend that the First and Sixth Amendments also require that they be
6 allowed to challenge the validity of the MEK's designation. Defendants concede that the Ninth
7 Circuit correctly noted in *Afshari* that in most cases, the validity of the FTO designation will not
8 be a question for the jury because "[t]he *fact* of the an organization's designation as an [FTO] is
9 an element of § 2339B, but the *validity* of the designation is not." *U.S. v. Afshari*, 426 F.3d
10 1150, 1158 (9th Cir. 2005) (quoting *U.S. v. Hammoud*, 381 F.3d 316, 331 (4th Cir. 2004) (*en
11 banc*)). However, citing to *McKinney v. Alabama*, 424 U.S. 336, 96 S.Ct. 1189 (1976) and a
12 panoply of First Amendment cases, Defendants argue that where the conduct at issue would be
13 safeguarded by the First Amendment but-for a designation made in an administrative process,
14 criminal defendants have the constitutional right to litigate whether the conduct is protected. *Id*.
15 at 673-74; *see also Ring v. Arizona*, 536 U.S. 584, 606-07 (2002) (jury must decide whether
16 speech was protected advocacy or prohibited incitement to imminent lawless action); *Hamling v.
17 United States*, 418 U.S. 87, 106 (1974) (jury must decide obscenity issue).

18    Defendants acknowledge that they previously argued to the Ninth Circuit in *Afshari* that
19 *McKinney's* holding allowed them to challenge the FTO designation on free speech grounds.
20 However, they contend that their reliance on *McKinney* in the instant motion raises a distinct
21 argument not addressed by the *Afshari* Court. In particular, Defendants represent that
22 previously, the argument presented to the Ninth Circuit was whether under the First Amendment
23 "*any* defendant in a material support case must always be entitled to challenge the validity of a
24 terrorist group's designation, regardless of the nature of the support at issue." Def.'s Mot. To
25 Dismiss 3, 21. Defendants claim that the Ninth Circuit rejected this argument, but on the
26 assumption that such support to the MEK was used to support violence and thus did not
27 implicate protected speech. *See Afshari*, 426 F. 3d at 1161 ("Defendants are entitled under the
28 First Amendment to publish articles arguing that the MEK is not really a terrorist organization,

8

1  but they are not entitled to furnish bombs to the MEK, nor to furnish money to buy bombs and
2  ammunition.")..

3  Defendants now argue that the Second Superseding Indictment, not before the *Afshari*
4  Court, seeks to punish Defendants from engaging in clearly protected free speech activities.  For
5  example, they point out that the Second Superceding Indictment alleges that the MEK produced
6  several television programs and a newspaper.  2d Supp. Indict. ¶¶ 4-5.  Thus, now the funds
7  raised by the Defendants were not necessarily supporting violence but were supporting allegedly
8  protected free speech activities.  As a result, Defendants contend that the *Afshari* opinion does
9  not foreclose the application of the First Amendment in the instant matter to challenge the FTO
10 designation.  *See e.g.  Freedman v. Maryland,* 380 U.S. 51, 58 (1965) (striking down statute
11 giving administrative decision-maker initial authority to censor film); *Hurley v. Irish -American*
12 *Gay, Lesbian, and Bisexual Group of Boston*, 515 U.S. 557, 570 (1995) ("newspapers' opinion
13 pages...fall squarely within the core of First Amendment security").

14 However, as the Government point out, the Defendants are incorrect in their assertion that
15 the *Afshari* Court did not acknowledge or realize that monetary funds could be used to support
16 potentially protected political activities.  *See Afshari*, 426 F.3d at 1161.  Further, the Second
17 Superceding Indictment continues to charge the Defendants with sending *money* to the MEK and
18 does not charge them with engaging in protected "instruction or advocacy."  *Id*.  As this Court
19 detailed in its Order Dismissing Defendants' Motion No. 2, the Second Superceding Indictment
20 *does not* charge Defendants with engaging in conduct at the core of the First Amendment.  The
21 Indictment does not allege that Defendants "issued press releases and announcements about
22 MEK terrorist activities," "produced television programs" to "solicit[] people to join the MEK,"
23 or "published and distributed" a newspaper called the "Mojahed."  2d. Supp. Ind., ¶¶ 2,4,5.
24 Instead, the Indictment alleges that the MEK, a designated FTO, engages in such activities.  The
25 Defendants, on the other hand, are charged with fundraising under the direction and control of
26 the MEK in order to "support MEK operations and activities, including terrorist activities."  *Id*.
27 at ¶ 14.
28 And, as the Ninth Circuit indicated in *Humanitarian Law Project*, Defendants have no

9

1 First Amendment right to send money to an FTO, regardless how that money may be used:

2 It follows that all material support given to such organizations aids
3 their unlawful goals. Indeed, as the government points out, terrorist
4 organizations do not maintain open books. Therefore, when
5 someone makes a donation to them, there is no way to tell how the
6 donation is used. Further, as amicus Anti-Defamation League notes,
7 even contributions earmarked for peaceful purposes can be used to
8 give aid to the families of those killed while carrying out terrorist
9 acts, thus making the decision to engage in terrorism more attractive.
10 More fundamentally, money is fungible; giving support intended to
11 aid an organization's peaceful activities frees up resources that can
12 be used for terrorist acts.

13 *Humanitarian Law Project v. Reno*, 205 F.3d 1130, 1136 (9th Cir. 2000); for fungibility
14 concerns, *see also U.S. v. Taleb-Jedi*, 566 F.Supp.2d 157, 168 (E.D.N.Y. 2008). ("[T]he
15 provision of personnel, like the provision of money, acts to free up others in a terrorist
16 organization to engage in violence and other acts of terrorism. There is a fungibility to service
17 for a terrorist organization just like there is a fungibility to the funding of a terrorist
18 organization." ). As a result, the Defendants have not shown that the First and Sixth
19 Amendment require the issue of the validity of the FTO designation be submitted to the jury.

20 **VI. Due Process Has Not Been Violated**

21 Defendants finally argue that Section 1189's bar to judicial examination by this Court of
22 the FTO designation violates due process. Defendants contend that even thought the Ninth
23 Circuit rejected their due process argument in *Afshari, Afshari*, 426 F.3d at 1155-59, the court
24 failed to address the line of Supreme Court precedent based on *Yakus v. United States*, 321 U.S.
25 414 (1944). However, Defendants provide this Court with no authority suggesting that it can
26 overrule an appellate decision because the appellate court failed to discuss a particular Supreme
27 Court precedent. As a result, the Court finds that Defendants' due process argument is
28 foreclosed.

For the foregoing reasons, Defendants' Motion is DENIED.

IT IS SO ORDERED.

DATED: April 14, 2009

_____
**DAVID O. CARTER**
**United States District Judge**